Affirmed and Memorandum Opinion filed March 13, 2007








Affirmed and
Memorandum Opinion filed March
13, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00993-CR

NO. 14-05-00994-CR

NO. 14-05-00995-CR

____________

 

ANDREW WESTELL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 228th
District Court

Harris County, Texas

Trial Court Cause Nos. 1010644,
1010645, 1018553

 



 

M E M O R A N D U M   O P I N I ON

On original briefing, appellant Andrew Westell challenged
his felony theft convictions alleging he received ineffective assistance of
counsel.  This court abated his appeals and remanded to the trial court for
appointment of counsel and an opportunity to file a motion for new trial.  On
remand to the trial court, appellant filed a motion for new trial based on
ineffective-assistance-of-counsel grounds and the trial court denied it. 
Concluding the trial court did not abuse its discretion in denying appellant=s motion for new
trial, we affirm. 








I.  Factual and Procedural
Background

Appellant was charged with two counts of felony theft in
cause numbers 1010644 and 1010645, and one count of aggregate felony theft from
an elderly person in cause number 1018553.  On December 28, 2004, after trial
counsel was appointed to represent him in these cases, appellant pled guilty to
all three counts, without an agreed recommendation from the State as to
punishment.  The trial court ordered a pre-sentence investigation (APSI@) and, on
September 16, 2005,  conducted a sentencing hearing.  The trial court found
appellant guilty on all three counts and for each count sentenced him to nine
years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  On the
day appellant was sentenced, his appointed counsel filed a notice of appeal in
all three cases and sought permission to withdraw from his representation of appellant. 
The trial court granted appointed counsel=s motion to
withdraw that day, leaving appellant without representation. 

On October 17, 2005, appellant=s mother filed a
declaration requesting that appellate counsel be appointed for her son.[1] 
No counsel was appointed in the trial court.  In his appeal to this
court, appellant voiced various complaints, including that the trial court
should have appointed counsel to represent him after allowing his trial counsel
to withdraw.  On November 9, 2006, after the parties submitted appellate briefs,
this court abated the appeals and remanded these cases to the trial court so
that the trial court could appoint counsel and give appellant thirty days to
file and present motions for new trial.  See Andrew Westell v. The State of
Texas, Nos. 14-05-00993-CR, 14-05-00994-CR, 14-05-00995-CR (Tex. App.CHouston [14th
Dist.] Nov. 9, 2006) (order).  On remand, appellant filed  motions for new
trial in these cases, contending that his counsel was ineffective in several
respects. Following abatement and remand, the trial court denied appellant=s motion for new
trial.  








II.  Issues and Analysis 

At the heart of appellant=s challenge to his
felony theft convictions is his contention that he was denied effective
assistance of counsel during the guilt-innocence phase as well as the
punishment phase of his trial.[2] 
Either in his appellate brief or in his motion for new trial, appellant has
asserted that his trial counsel was deficient in the following respects: 

(1)     failing to adequately confer with him before
he entered his guilty plea;

          (2)     failing to
adequately prepare him to testify at sentencing;[3]

(3)     failing to interview defense witnesses to
testify at sentencing;

          (4)     failing to
prepare defense witnesses to testify at sentencing;

(5)     failing to interview any of the potential
witnesses who allegedly would have provided mitigation evidence at sentencing;

(6)     failing to adequately object to alleged
deficiencies in the PSI report;[4]









(7)     failing to check the appropriate boxes in
the notice-of-appeal form, thereby hindering him from properly filing a motion
for new trial and making an adequate record for appeal.[5]   


 

According to appellant, his trial counsel=s allegedly
deficient conduct caused him to enter involuntary pleas.  Appellant argues that
he would have been in a better position to make a fully informed decision on
whether to plead guilty or take his cases to trial if his trial counsel had
done a better job of communicating with him and investigating his cases.   This
failure, appellant argues, rendered his pleas unknowing and involuntary. 








Both the
United States and Texas Constitutions guarantee an accused the right to
assistance of counsel. U.S. Const. amend.
VI; Tex. Const. art. I, ' 10; Tex. Code Crim. Proc. art. 1.051 (Vernon 2005).  This right
necessarily includes the right to reasonably effective assistance of counsel.  Strickland
v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); Ex
parte Gonzales, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997).  To prove
ineffective assistance of counsel, appellant must show that (1) trial counsel=s representation fell below an
objective standard of reasonableness, based on prevailing professional norms;
and (2) there is a reasonable probability that the result of the proceeding
would have been different but for trial counsel=s deficient performance.  Strickland,
466 U.S. at 688B92.  Moreover, appellant bears the burden of proving his
claims by a preponderance of the evidence.  Jackson v. State, 973 S.W.2d
954, 956 (Tex. Crim. App. 1998).  We review the trial court=s decision to deny appellant=s motion for new trial for an abuse
of discretion.  Holden v. State, 201 S.W.3d 761, 763 (Tex. Crim. App.
2006).  We do not substitute our judgment for that of the trial court; rather,
we decide whether the trial court=s decision was
arbitrary or unreasonable.  Id.  A trial court abuses its discretion in
denying a motion for new trial only when no reasonable view of the record could
support the trial court=s ruling.  Id.

In
assessing appellant=s claims, we apply a strong presumption that trial counsel
was competent.  Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999).  We presume counsel=s actions and decisions were reasonably professional and were
motivated by sound trial strategy.  See Jackson v. State, 877 S.W.2d
768, 771 (Tex. Crim. App. 1994).  Absent an opportunity for trial counsel to
explain his actions, appellate courts should not find ineffective assistance
unless the challenged conduct was A>so outrageous that no competent
attorney would have engaged in it.=@  Goodspeed v. State, 187
S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001)).  

A.        Did the trial court abuse
its discretion in denying appellant=s motion for new trial on his claim
that his trial counsel was ineffective for failing to adequately confer with
appellant before appellant entered his guilty pleas? 








In his
first claim for ineffective assistance of counsel, appellant contends that his
counsel failed to adequately confer with him before he pled guilty, rendering
his pleas  involuntary.  Appellant contends that his attorney did not properly
advise him on the law applicable to his cases or the alternatives available to
him and, therefore, appellant asserts, his guilty pleas were not knowing and
voluntary.  In determining the voluntariness of the pleas, we consider the
entire record.  Williams v. State, 522 S.W.2d 483, 485 (Tex. Crim. App.
1975).  When a defendant enters his plea upon the advice of counsel and
subsequently challenges the voluntariness of that plea based on alleged
ineffective assistance of counsel, the voluntariness of such plea depends on
(1) whether counsel=s advice was within the range of
competence demanded of attorneys in criminal cases and, if not, (2) whether
there is a reasonable probability that, but for counsel=s errors, he would
not have pleaded guilty and would have insisted on going to trial.  See Hill
v. Lockhart, 474 U.S. 52, 56, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)
(holding the two part test articulated in Strickland v. Washington, 466
U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) applies to challenges to guilty
pleas based on ineffective assistance of counsel); Ex Parte Morrow, 952
S.W.2d 530, 536 (Tex. Crim. App.  1997).  Therefore, the question posed in this
case is whether the trial court abused its discretion in determining that
appellant did not meet his burden of proving that: (1) counsel=s alleged failure
to properly advise
appellant on the law applicable to his cases or the alternatives available to
him, including the availability of the jury to assess punishment, was outside
the range of competence demanded of attorneys in criminal cases; and (2) but
for defense counsel=s errors, appellant would not have pleaded
guilty and would have insisted on going to trial.  See Morrow, 952
S.W.2d at 536.

The record of the hearing on appellant=s motion for new
trial does not show the trial court abused its discretion.  Despite appellant=s contentions, his
trial counsel testified that he met with appellant in his law office, and
talked to appellant on several occasions to discuss his cases and defense. 
During many conversations, appellant=s counsel
discussed the option of restitution with him, which, in turn, might have opened
up the possibility of probation.  Appellant=s counsel informed
him that, unless appellant paid restitution, the State would not consider
probation.  More specifically, the record reflects the following during direct
examination of appellant=s trial counsel, R. P. ASkip@ Cornelius: 

[Appellant=s counsel]:                 Okay. 
Going C going back to the day of trial. 
You were set June 27th, 2005, according to the record. You had some discussions
with him prior to that date about restitution, how much he could make. And
obviously it=s failed. 

Did you ever discuss with him the possibility or suggest to him that it
was better to go to the Judge for punishment because in all likelihood he would
get probation, rather than from the State? 

 

[Cornelius]:                               No.
From the State? You mean from a jury?

[Appellant=s counsel]:                 Well,
fromCor that he was neverCyou were never going to be able to
enter a plea agreement with the State for probation. So, your best option is to
go the Judge because he=ll give you probation. Did you ever
suggest anything like that to him? 








[Cornelius]:                               No.
And never I felt [should Anever@ be after AI@?] the Judge would give him
probation. 

[Appellant=s counsel]:                 Okay.

[Cornelius ]:                              And
I thought his best option was to go to trial with a jury, but he didn=t want to do that. 

 

. . .     

 

[Appellant=s counsel]:                 When,
if you can recall, was the decision made to go to the Judge rather than to the
Jury?

[Cornelius]:                               I
don=t know. When it was made, I don=t know.

[Appellant=s counsel]:                 Okay. Well,
it would had to have beenCwould you agree with me it had to
have been made at some point on that day in deciding whether to go to trial or
plea because he pled that day that you were set for trial? 

[Cornelius]:                               No. 
I don=t know if we talked about it
beforehand. Was that the only trial setting?

[Appellant=s counsel]:                 That
was the only trial setting accordingC

[Cornelius]:                               Okay.

[Appellant=s counsel]:                 AccordingCaccording to the record, that was
the only trial setting.

[Cornelius]:                               I
really don=t know because myCmy recollection is that up to the
last second, his promises were that he was going to get the restitution. AndCand the case had just been reset so
many times for him to get the restitution, that the State just wasn=t going to agree to it any further.









But even after it was set for trial, he promised to get the
restitution, all of it.  And he had some story as to how he was going to get
it. And it just didn=t happen.  But he may have told me
before the day of trial that it wasn=t going to come to fruition.  And maybe the decision was
made at that point.  I don=t really remember.  It was his decision.  And he chose to plead to the
Judge.  He could have had a jury, you know, and he just decided to go to the
Judge. 

[Appellant=s counsel]:                 And you
neverCnever suggested to him at all that
it was better to go to the Judge because this Judge would give him probation?

[Cornelius]:                               No,
I never said that. 

. . .

[Appellant=s counsel]:                 Sorry.
If my client had stated that the first time he heard about the aggregate theft
and the charge of aggregate theft against him was June 27th, the day he
reviewed the plea papers, would be that correct or incorrect? 

[Cornelius]:                               Incorrect.


[Appellant=s counsel]:                 Okay.
And yet again, you told himCyou never told him even as you were signing the plea papersClet me rephrase that.      

At any point when you were filling out the plea papers with him, did
you prepare him for the possibility of getting jail time? Had y=all had a discussion about jail
time versus probation? 

 [Cornelius]:                              Absolutely.


[Appellant=s counsel]:                 And
what did you tell him? 

[Cornelius]:                               That
he probably was not going to get probation because he hadn=t paid any restitution, not a dime
in all the years. When did this happen? In all the years that had gone by, he
had not paid a time [sic] of restitution.  And I felt it unlikely he would get
probation.

 

During
cross-examination, appellant=s trial counsel testified on this issue as follows: 

 

[The State]:                                         You
said that there wasCyou don=t
recall when the decision was made about not going forward with the jury trial,
but the decision was his. Can you recall how heChow you were informed that he made the decision he did not want to take
the case to a jury? 








[Cornelius]:                                        He
told me.

[The State]:                                         He
here in person, in your office, on the telephone? 

[Cornelius]:                                        I
can=t remember if it was on the telephone before the day
of trial or if it was the day of trial. I can=t remember.

[The State]:                                         Okay.


[Cornelius]:                                        I
can=t remember when it was that he finally said I=m not going to be able to get the money.

[The State]:                                         On
the day of trial, that=s when we entered into the pleaBentered the plea before the Court, correct? 

[Cornelius]:                                        If
that=s what the record shows. I don=t really remember. 

[The State]:                                         Okay.
Well, you and/or I would have completed the paperwork. And did you then sit
down and go through the paperwork with him? 

[Cornelius]:                                        Yes.


[The State]:                                         Do
you recall if he asked you any questions during that time? 

[Cornelius]:                                        I
don=t recall.

[The State]:                                         Okay.

[Cornelius]:                                        He
B I don=t think it was
much of a problem. After all, he is, according to him, a lawyer. 

. . .       

[The State]:                                         Okay.
Do you remember there being any difficulty in Mr. Westell understanding what
was going on around him that day? 

[Cornelius]:                                        None.


[The State]:                                         Do
you remember being able to speak with him and he answer questions in an
appropriate fashion? 

[Cornelius]:                                        Yes.


[The State]:                                         Was
he coherent to you?

[Cornelius]:                                        Yes.









Moreover,
appellant and his lawyers signed a document entitled AWaiver of Constitutional Rights,
Agreement to Stipulate, and Judicial Confession,@ in which appellant agreed with the
following statement: AI am satisfied that the attorney representing me today in
court has properly represented me and I have fully discussed this case with
him.@  This document contains the
following statement signed by the trial judge:

After I admonished the defendant of the consequences
of his plea, I ascertained that he entered it knowingly and voluntarily after
discussing the case with his attorney. It appears that the defendant is
mentally competent and the plea is free and voluntary. I find that the
defendant=s attorney is competent and has effectively represented the defendant in
this case.

On the
same day (June 27, 2005), the appellant signed another document entitled AAdmonishments@ which contains the following
statement: AI fully understand the consequences of my plea herein, and after having
consulted with my attorney, request that the trial court accept said plea.@  See Grays v. State, 888
S.W.2d 876, 878 (Tex. App.CDallas 1994, no pet.) (concluding that when a trial court
substantially complies with article 26.13(a), it constitutes a prima facie
showing the defendant=s guilty plea was entered knowingly and voluntarily, and it
is the defendant=s burden to show otherwise);  Enard v. State, 764
S.W.2d 574, 575 (Tex. App.CHouston [14 Dist.] 1989, no pet.) (holding appellant=s guilty plea was not involuntary
because it was based on his attorney=s erroneous advice where, among other
things, appellant=s plea papers reflected he entered his guilty plea
voluntarily).  In this document appellant states: A I am totally satisfied with the
representation provided by my counsel and I received effective and competent
representation.@








At a hearing on a motion for new trial, the trial court is
the trier of fact and its findings should not be disturbed unless abuse of
discretion has been demonstrated.  See Reissig v. State, 929 S.W.2d 109,
113 (Tex. App.CHouston [14 Dist.] 1996, pet. ref=d).  In addition,
the trial court can consider the interest and bias of any witness, and the
judge is not required to accept as true the testimony of the accused or any
defense witness simply because it was not contradicted.  See id.  Based on appellant=s trial counsel=s testimony during the motion-for-new
trial hearing, and the documents appellant signed, the trial court did not
abuse its discretion by impliedly concluding that the alleged
ineffective assistance of appellant=s trial counsel
did not cause appellant to enter involuntary guilty pleas. See Thomas v.
State, 2 S.W.3d 640, 641 (Tex. App.CDallas 1999, no
pet.).[6]


B.      Did the
trial court abuse its discretion in denying appellant=s motion for new
trial on appellant=s claim that his trial counsel was
ineffective for failing to adequately prepare appellant to testify at
sentencing?   

In his second ineffective-assistance claim, appellant
contends that his counsel was ineffective for failing to adequately prepare him
to testify on his own behalf during the punishment hearing.  This complaint is
based on the false premise that appellant testified at the punishment hearing. 
He did not. Moreover, there is no evidence from appellant=s motion for new
trial or from the hearing on that motion to show how appellant=s trial counsel
was ineffective regarding this issue.  Appellant did not raise this issue at
the motion-for-new-trial hearing.  In his written motion for new trial,
appellant made the general statement that his counsel was ineffective for
failing to adequately prepare him to testify, but appellant did not offer any
facts or explanation in support of this claim.  The trial court did not abuse
its discretion in impliedly concluding that appellant failed to satisfy both
prongs of Strickland on this claim. 








C.        Did
the trial court abuse its discretion in denying appellant=s motion for new trial on his claims
that his trial counsel failed to interview defense witnesses for
sentencing, failed to prepare defense witnesses to testify at sentencing, and
failed to interview any potential witnesses who allegedly were willing to
provide mitigation evidence?  

In his
third, fourth, and fifth claims,  appellant essentially complains that his counsel
was ineffective for failing to interview and secure the presence of his parents
and other potential character witnesses (to be named by his parents) at the
punishment phase for the purpose of providing mitigation evidence.  To support
this contention, appellant attached affidavits from both of his parents to his
motion for new trial. 
The record of the hearing, however, shows that appellant=s trial counsel (Cornelius met with
appellant=s parents on a few occasions, including once in his office, and once in
the courtroom.  Cornelius also testified that he returned every phone call that
appellant=s parents made to him.

In
addition, although appellant attached affidavits from his mother and father
stating that they both had an abundance of witnesses who were willing and
available to give testimony on appellant=s behalf, neither of appellant=s parents identified any of these
purported witnesses in their respective affidavits, nor did appellant or his
parents attempt to explain what testimony these unnamed witnesses could have
offered had they been called to testify at the punishment hearing.  Moreover,
appellant does not explain how any such testimony might have impacted the
outcome of the case. 








Counsel=s failure to call witnesses at the
guilt/innocence or punishment phases is irrelevant absent a showing that the
purported witnesses were available and that their testimony would have
benefitted appellant=s case.  King v. State, 649 S.W.2d 42, 44 (Tex. Crim.
App. 1983).  Appellant had an opportunity to have his parents and any other
purported character witnesses testify at the motion-for-new trial hearing and
explain what testimony they would have offered had they been called to testify
at the punishment hearing.  Appellant, however, did not offer any such evidence
at the motion-for-new trial hearing.  Accordingly, the record is insufficient
to establish ineffective assistance on this ground.  See Melancon v. State,
66 S.W.3d 375, 379 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d) (holding record insufficient to
establish that counsel's failure to subpoena alibi witness and secure her
testimony at trial constituted ineffective assistance of counsel where witness
did not testify at motion-for-new trial hearing). 

Furthermore,
the appellant must overcome the presumption that, under the circumstances of
the case, counsel=s contested actions may be considered sound trial strategy. Strickland,
466 U.S. at 690.  Strategic and tactical decisions are virtually
unchallengeable when made after thorough investigation of the facts and law.  Id. 
It is possible that appellant=s trial counsel, after talking to appellant=s parents and evaluating the facts
and law, made a strategic decision not to present any character witnesses at
the punishment phase.   Appellant has not shown that any such conduct was A>so outrageous that no competent
attorney would have engaged in it.=@  Goodspeed, 187 S.W.3d at
393; see also Hale v. State, 140 S.W.3d 381, 392 (Tex. App.CFort Worth 2004, pet. ref=d) (concluding that counsel was not ineffective
for failing to investigate and interview defense witnesses in child molestation
case who would testify that they had never seen the defendant act
inappropriately with children and that children never appeared to be afraid or
uncomfortable around defendant); Turner v. State, 932 S.W.2d 622, 625
(Tex.App.CHouston [14th Dist.] 1996, no pet.) (concluding that counsel was not
ineffective for failing to call any character witnesses when character
witnesses knew nothing of the facts of the assault and could testify only about
defendant=s good reputation for truth and peacefulness).   








Even if
this decision were considered unreasonable and deficient, however, a finding of
ineffective assistance of counsel still would require a reasonable probability
that the outcome of the sentencing hearing would have been different with
character evidence or that confidence in the outcome was undermined by counsel=s failure to introduce additional
character evidence.  See Jaenicke v. State, 109 S.W.3d 793, 800 (Tex.
App.CHouston [1st Dist.] 2003, pet. ref=d ).  Appellant=s motion for new trial and
affidavits, and the record of the motion-for- new trial hearing contain nothing
to show how the outcome would have been different if character evidence had
been introduced during the punishment phase of trial.  Thus, the trial court
did not abuse its discretion in concluding appellant did not establish
prejudice.   

We
conclude the trial court did not abuse its discretion by impliedly concluding
that appellant failed to satisfy the first and second prongs of Strickland on
these claims.  

D.      Was trial
counsel ineffective for failing to adequately object to alleged deficiencies in
the PSI report? 

In his third issue in his original brief, appellant
contends that his trial counsel was ineffective for failing to adequately
object to purported deficiencies in the PSI report.  This ground, as stated
above in footnote 2, was not raised in appellant=s motion for new
trial filed after abatement.  In this issue, appellant does not discuss or
identify the purported deficiencies  he claims should have drawn an objection
from his trial counsel.  The subject of the PSI report, however, was brought up
briefly during appellant=s testimony at the motion-for-new trial
hearing.  During the hearing, when questioned, appellant admitted that his
trial counsel made some objections to the PSI report on the day of sentencing,
but did not discuss what objections should have been made by this trial counsel
prior to sentencing. 

When, as in this case, there is no proper evidentiary
record developed at a hearing on a motion for new trial, it is extremely
difficult to show that trial counsel=s performance was
deficient.  See Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002).  The Court of Criminal Appeals has stated that it should be a rare case
in which an appellate court finds ineffective assistance on a record that is
silent as to trial counsel=s trial strategy regarding an alleged
instance of ineffective assistance.  See Andrews v. State, 159 S.W.3d
98, 103 (Tex. Crim. App. 2005) (stating that facts at hand presented a Arare case@ in which
ineffective assistance can be found on direct appeal based on a record silent
as to counsel=s trial strategy). 








Although there was a hearing in this case, the record does
not address any alleged failure of appellant=s trial counsel to
object to alleged deficiencies in the PSI report or the trial strategy relating
thereto.  Based on this silent record regarding counsel=s failure to
object to the alleged deficiencies in the PSI report, we cannot conclude
appellant has met his burden to overcome the strong presumption of reasonable
assistance and show that any
such conduct was Aso outrageous that no competent attorney would have engaged
in it.@  Goodspeed, 187 S.W.3d at
393; see
also Freeman v. State, 125 S.W.3d 505, 506B07 (Tex. Crim.
App. 2003) (stating that A[t]he record in this case is insufficient
to support the conclusion that the defendant received ineffective assistance of
counsel because the defendant did not develop a record in the trial court for
the purpose of establishing this claim.@).  Therefore,
appellant has failed to satisfy the first prong of Strickland on this
claim.  

Having addressed all of appellant=s assertions of ineffective
assistance of counsel and concluded that none of these claims have merit, we
overrule appellant=s third issue and affirm the trial court=s judgment. 

 

 

 

 

/s/          Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed March 13, 2007.

Panel consists of
Justices Fowler, Edelman, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  Appellant contends that, on this same day, his
mother filed a AMotion to Appoint Appellate Counsel and Motion for New
Trial@ on appellant=s
behalf.  In his appellate brief, appellant cites to the clerk=s record in support of this factual statement;
however, the clerk=s record does not contain either of these motions. 
The record contains a declaration from appellant=s mother alleging that appellate counsel had not yet been appointed to
represent her son, and she, therefore, was filing a motion requesting the trial
court to appoint appellate counsel for her son.  





[2]  Appellant=s
third issue, as it relates to the merits, is the only issue that remains before
us in this appeal.  We disposed of appellant=s
first and second issuesCthat the trial court (1) erred in failing to appoint
him counsel during the thirty days in which to file a motion for new trial and
(2) erred by failing to have a hearing on his pro-se motion for new trialCwhen we abated this case to allow appellant time to file
and obtain a hearing on a motion for new trial. 





[3]  We note that appellant asserted items (1) and (2) in
his motion for new trial but not in his appellate brief.  Nevertheless, we do
not see any reason to request supplemental briefing from the parties on these
issues because it is the record, not the briefs, that must definitely and
affirmatively support appellant=s allegations
of ineffective assistance.  Thompson v. State, 9 S. W.3d 808, 813 (Tex.
Crim. App. 1999).  Thus, we do not consider supplemental briefing on these
issues necessary.  See Tex. R.
App. P.  38.7 (stating that it is within the appellate court=s discretion to allow supplemental briefing whenever
justice requires). 





[4]  Appellant did not raise in his motion for new trial
the ground that his trial counsel was defective in failing to object to certain
deficiencies in the PSI report.  However, appellant did raise this ground in issue three of
his original briefing.  Because it is not necessary for all
ineffective-assistance claims to be raised at the trial court or in a motion
for new trial, we will address it in this opinion.  See Robinson v. State, 16
S.W.3d 808, 811B12 (Tex. Crim. App. 2000)
(concluding that it would be absurd to require trial counsel to litigate his
own ineffectiveness in a motion for new trial in order to preserve the claim
for appeal.).     





[5]  Appellant raises this ground of ineffectiveness in
issue three of his original briefing.  However,  we conclude that this ground
of alleged ineffectiveness is moot because we abated this appeal and gave
appellant an opportunity to file a timely motion for new trial and develop a
record for appeal.  Thus, we do not see any reason to address this ground in
this opinion, and we overrule issue three in his original briefing as to this
ground. 





[6]  Appellant=s
testimony differs from his trial counsel=s
testimony in that he contends his trial counsel did not confer with him about
the alternatives to entering  pleas.  Appellant further testified that, had he
been fully informed, he would have been in a better position to make a good
decision on whether to plead guilty or take his cases to trial.  We note that
the trial court could have accepted as true the testimony of trial counsel, and
rejected the testimony of appellant even if the appellant=s testimony had not been contradicted.   See
Reissig, 929 S.W.2d at 113.